UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
FIRESABRE CONSULTING LLC,

                              Plaintiff,

           - against -

PEGGY SHEEHY, JAMES YAP, METAVERSED LTD.,          **OPINION AND ORDER**
and PAMELA FREDERICK, CRAIG LONG, THOMAS
BOLLATTO, WILLIAM GONZALEZ, MAUREEN DANZIG,          No. 11-CV-4719 (CS)
TERESA MONAHAN, and CLARKE OSBORN, each in their
official capacities as members of the BOARD OF THE
RAMAPO CENTRAL SCHOOL DISTRICT,

                              Defendants.
-------------------------------------------------------------------x

Appearances:
Constantine D. Pourakis
Stevens & Lee
New York, New York

Francis X. Taney, Jr.
Stevens & Lee
Philadelphia, Pennsylvania
*Counsel for Plaintiff*

Edward Donlon
Laura A. Endrizzi
Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger
Uniondale, New York
*Counsel for Defendants*

Seibel, J.

        Before the Court are Plaintiff's Motion for Partial Summary Judgment, (Doc. 37), and

Defendants' Cross-Motion for Summary Judgment, (Doc. 35).  For the reasons stated below,

both Motions are DENIED.

I. <u>BACKGROUND</u>

The following facts are based on the parties' Local Civil Rule 56.1 statements and

supporting materials, and are undisputed except where noted.[1]

This copyright case arises from a dispute over payment for computer programming and

digital design services rendered in connection with the virtual world Second Life.  Second Life is

an internet-based simulation in which users appear via digital characters called "avatars" and

interact with a computer-generated environment.  (*See generally* Complaint ("Compl."), (Doc.

1), ¶¶ 17, 19.)  Second Life is run by Linden Research, Inc. ("Linden"), which sells parcels of

virtual space in the simulation that are referred to as "islands."  (*See id.* ¶ 18; P's 56.1 ¶ 17.)[2]

Each island in the simulation starts off as a flat green rectangle, and the user can then change the

topography and landscape of the island (known as "terraforming") using a series of interactive

tools provided by Linden.  (Ds' 56.1 ¶¶ 8-12.)[3]  Second Life users can then populate the island

with simulated objects, buildings, and other content they create or purchase, allowing avatars in

the online virtual world to see, hear, and use those objects.  (*See* Compl. ¶ 17; P's 56.1 ¶¶ 45-46.)

Defendant Cindy Sheehy is a technology instructor at Suffern Middle School, which is

part of the Ramapo Central School District (the "District").  (P's 56.1 ¶¶ 4, 9.)  In 2005 and

2006, Sheehy developed a plan to use Second Life as an educational tool.  (*Id.* ¶ 14; Ds' 56.1

¶ 2.)  With the help of Defendant James Yap, the District's Director of Instructional Technology

and Data Management, in 2006 Sheehy obtained permission to purchase three islands in Second

---

[1] Counsel for both sides have failed to abide by my Individual Practices, which require that any party opposing a motion for summary judgment reproduce each entry in the moving party's Local Rule 56.1 Statement of Material Facts and set out the opposing party's response directly beneath it.  In the future, I expect counsel to comply with my Individual Practices.

[2] "P's 56.1" refers to Plaintiff's Statement of Material Facts In Support of Motion for Partial Summary Judgment Pursuant to Local Rule of Civil Procedure 56.1.  (Doc. 44.)

[3] "Ds' 56.1" refers to Ramapo Defendants' Counter Statement of Facts.  (Doc. 36.)

Life (the "First Three Islands") to create a virtual classroom for her students called "Ramapo Islands."  (P's 56.1 ¶¶ 11-17, 21; Ds' 56.1 ¶¶ 1-2.)

In the summer of 2006, Sheehy attended the Second Life Community Convention in San Francisco, where she discussed her ideas and sought out assistance in creating content to place within the Ramapo Islands simulation.  (P's 56.1 ¶ 24; Ds' 56.1 ¶ 3.)  Several educators and Second Life enthusiasts from across the country expressed interest in assisting Sheehy in furthering the Ramapo Islands project, (Ds' 56.1 ¶ 4), including Frederick Fuchs, the sole owner and founder of Plaintiff FireSabre Consulting LLC, (P's 56.1 ¶ 25).  Plaintiff is an education-focused technology development company in the business of creating content for deployment in three-dimensional virtual worlds such as Second Life.  (*Id.* ¶¶ 1-3; Deposition of Frederick Fuchs ("Fuchs Dep."), (Doc. 43 Ex. A), at 6-7.)  Discussions between Sheehy and Fuchs continued after the conference, (P's 56.1 ¶ 27), and eventually led to Plaintiff providing Sheehy with numerous services in connection with the Ramapo Islands project.  An example screenshot showing a small corner of the virtual Ramapo Islands is below.  (Doc. 48 Ex. B.)



During the 2006-2007 school year, Plaintiff assisted Sheehy by coordinating among several other persons providing assistance with the project, (*id.* ¶ 29; Ds' 56.1 ¶ 6), providing troubleshooting and account creation services, (P's 56.1 ¶ 32), and performing terraforming on the First Three Islands, (*id.* ¶ 30; Ds' 56.1 ¶ 7).  No written contract was executed between the parties regarding the 2006-2007 school year, (P's 56.1 ¶ 36; Deposition of Craig H. Long, (Doc. 43 Ex. B), at 43-44), and the parties never discussed the issue of who owned the intellectual property rights to any aspect of the Ramapo Islands project, (P's 56.1 ¶ 35).  The parties dispute whether Sheehy promised that the District would pay for Plaintiff's services rendered during this school year or whether Fuchs had volunteered to provide services free of charge.  (*Compare* P's 56.1 ¶¶ 34, 37 (Plaintiff was an independent contractor that was to be paid $10,000 for the 2006-2007 school year) *with* Ds' 56.1 Resp. ¶¶ 28, 34, 37 (Fuchs was a volunteer).)[4]

At the end of the 2006-2007 school year, Sheehy obtained permission from the District to purchase another three islands within Second Life to expand the Ramapo Islands project (the "Second Three Islands").  (P's 56.1 ¶ 40; Ds' 56.1 ¶ 15.)  At the same time, Sheehy and Fuchs discussed the extent to which Plaintiff would continue to assist with the Ramapo Islands project during the next school year.  (P's 56.1 ¶ 41; Ds' 56.1 Resp. ¶ 41.)  During the course of the negotiations, Plaintiff transmitted to Defendants several written proposals for services to be provided during the 2007-2008 school year, (*see* Doc. 39, Ex. J), but again no formal contract between the parties was ever executed, (P's 56.1 Resp. ¶ 17).[5]  Plaintiff subsequently created a significant amount of content for the Second Three Islands, including a train station, a café, music shops, and a volcano.  (P's 56.1 ¶¶ 45-46; D's 56.1 ¶ 19; *see* Doc. 39, Ex. I (screenshots of Ramapo Islands deposited with U.S. Copyright Office).)

---

[4] "Ds' 56.1 Resp." refers to Defendants' Response to Plaintiff's Rule 56.1 Statement.  (Doc. 36.)

[5] "P's 56.1 Resp." refers to Plaintiff's Response to Defendants' Counterstatement of Material Facts.  (Doc. 46.)

Plaintiff received $5,000 from the District in connection with services rendered during the 2007-2008 school year.  (P's 56.1 ¶¶ 42-43; Ds' 56.1 Resp. ¶¶ 42-43; Ds' 56.1 ¶ 18; P's 56.1 Resp. ¶ 18.)  The parties dispute the full extent of Plaintiff's work performed during that year, whether those services were in excess of the parties' original agreement, the market value of the services provided, and whether the $5,000 was full payment for all services rendered or only a partial payment that Plaintiff accepted under protest.  (*Compare* P's 56.1 ¶¶ 42, 44 (Plaintiff expected a higher fee); P's 56.1 Resp. ¶¶ 16, 18 (Plaintiff performed services beyond content creation and did not receive full payment from District) *with* Ds' 56.1 Resp. ¶¶ 42, 44; Ds' 56.1 ¶ 18 (Plaintiff was paid an agreed-upon and fair price for all services rendered).)  Significantly, Defendants claim that the $5,000 purchased either a copy of the content or at least a perpetual right to use it, (Ds' 56.1 Resp. ¶ 52; Deposition of Peggy Sheehy ("Sheehy Dep."), (Doc. 43 Ex. D), at 106-09), while Plaintiff seems to assume the payment was for a license of limited duration.

At the end of the 2007-2008 school year, the relationship between the parties finally unraveled.  (P's 56.1 ¶¶ 49-51; Ds' 56.1 ¶¶ 20-22.)  In the summer of 2008, Plaintiff deposited a set of forty screenshots of Ramapo Islands with the U.S. Copyright Office, and on July 8, 2008, Plaintiff obtained a Certificate of Registration of its digital artwork copyright.  (Ds' 56.1 ¶¶ 23-25; *see* Doc. 39, Exs. H, I.)  Plaintiff then notified Sheehy and Yap that continued use of any of Plaintiff's Second Life content beyond August 1, 2008 would be "unlicensed."  (P's 56.1 ¶ 51; *see* Doc. 39, Ex. K.)  The record is not clear as to whether Defendants removed any content from Ramapo Islands in response to this notification, but Sheehy believed that the $5,000 the District paid to Plaintiff entitled Defendants to the continued use of the content in question.  (Ds' 56.1 Resp. ¶ 52.)

Plaintiff alleges that its content was still being displayed on Ramapo Islands after August 1, 2008.  (P's 56.1 ¶¶ 53-54).  Plaintiff claims it was forced to enter Second Life and engage in "self-help," (P's Mem. 2),[6] and submit to Linden several takedown requests pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, in order to remove its content that remained on Ramapo Islands after the August 1 deadline, (P's 56.1 ¶ 56).  Defendants inconsistently claim that Plaintiff had removed all its content from Ramapo Islands prior to August 1, 2008, (Ds' 56.1 Resp. ¶¶ 53-54), while also acknowledging that Plaintiff engaged in "self help" after that date pursuant to which "[a]ll of FireSabre content [*sic*] from the second three Islands was removed," (Ds' 56.1 ¶¶ 28-29).  Defendants further contradict themselves by admitting that Plaintiff subsequently submitted DCMA takedown requests to Linden relating to "FireSabre's copyrighted content," (P's 56.1 ¶ 56; Ds' 56.1 Resp. ¶ 56), and that some content created by Plaintiff – specifically, the terraforming of the First Three Islands – remained on Ramapo Islands even after these actions, (Ds' 56.1 ¶ 34).

Plaintiff further alleges that some of its content remained on display on Ramapo Islands through 2011, when Defendants had the entire Ramapo Islands project (including the remaining elements of Plaintiff's content) copied from Second Life to OpenSim, a different virtual world simulation.  (P's 56.1 ¶¶ 57-66.)  While Defendants acknowledge that the Ramapo Islands project was copied to OpenSim in 2011, they claim that the copy was ultimately unsuccessful and was never used, (Ds' 56.1 ¶¶ 36-41), while Plaintiff contends the copy was successful, (P's 56.1 ¶¶ 61-66; P's 56.1 Resp. ¶ 40).

---

[6] "P's Mem." refers to Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment.  (Doc. 43).

Plaintiff now brings this action for willful copyright infringement pursuant to 17 U.S.C. § 501 *et seq.*, seeking actual or statutory damages, impoundment and destruction of all infringing copies, and an injunction against further infringement.  (*See* Compl. ¶¶ 62, 69, 73.)

## II.  <u>DISCUSSION</u>

Plaintiff alleges two distinct instances of infringement of its July 8, 2008 copyright.  (P's Reply 2.)[7]  First, Plaintiff points to Defendants' continued use and display of content it created in the 2007-2008 school year for the Second Three Islands from August 1, 2008 (the date on which Defendants' "license" to use that content was revoked) until the last of the Second Three Islands content was removed from Second Life in mid-September 2008 via Plaintiff's self-help and DMCA takedown requests.  (P's Mem. 14; P's Reply 2-3.)  Second, Plaintiff claims that Defendants created an infringing copy of the terraforming it performed in the 2006-2007 school year on the First Three Islands by copying the Ramapo Islands project onto the OpenSim servers in January 2011.  (P's Mem. 14; P's Reply 4-7.)

Defendants assert that they had paid for the right to continued use of Plaintiff's work.  (Ds' 56.1 Resp. ¶ 52; Sheehy Dep. 106-09.)  Defendants also contend that any unauthorized use of content created by Plaintiff, whether the content on the Second Three Islands or the terraforming on the First Three Islands, constituted fair use of the material.  (Ds' Mem. 12; Ds' Reply 6.)[8]  In addition, with respect to the First Three Islands terraforming in particular, Defendants argue that:  (1) terraforming is not eligible for copyright protection because it is not a "fixed" work; (2) Plaintiff's copyright does not include the terraforming on the First Three

---

[7] "P's Reply" refers to Plaintiff's Reply Memorandum in Support of Motion for Partial Summary Judgment and in Opposition to Cross-Motion for Summary Judgment.  (Doc. 45.)

[8] "Ds' Mem." refers to Ramapo Defendants' Memorandum of Law in Opposition to Plaintiff's Motion and in Support of Their Motion for Summary Judgment.  (Doc. 40.)  "Ds' Reply" refers to Memorandum of Law in Reply to Plaintiff's Opposition to Ramapo's Summary Judgment Motion.  (Doc. 41.)

Islands; and (3) any remaining traces of Plaintiff's terraforming when the Ramapo Islands were transferred to OpenSim were *de minimis*.  (Ds' Mem. 6-7, 9.)

## A. <u>Legal Standard</u>

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.  The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim."  *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

**B.  Plaintiff's Motion for Partial Summary Judgment**

1.  Legal Standards

The Copyright Act invests copyright holders with several exclusive rights with respect to their copyrighted works, including the exclusive rights "to reproduce the copyrighted work in copies . . . to prepare derivative works based on the copyrighted work . . . [and] to display the copyrighted work publicly."  17 U.S.C. § 106.  A *prima facie* claim for copyright infringement includes two elements:  (1) ownership of a valid copyright; and (2) violation of the copyright holder's exclusive rights in the work.  *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012).  A certificate of copyright registration creates a rebuttable presumption of ownership of a valid copyright.  *Id.*; *see* 17 U.S.C. § 410(c).

To prove unauthorized copying, a plaintiff must "provide either direct evidence of copying or, more typically, provide evidence that the defendant had access to the copyrighted

work and demonstrate that the plaintiff's and the defendant's works are substantially similar in their protectable elements." *Effie Film, LLC v. Murphy*, No. 11-CV-783, 2013 WL 1188018, at *14 (S.D.N.Y. Mar. 22, 2013); *see Boisson v. Banian, Ltd.*, 273 F.3d 262, 267-68 (2d Cir. 2001). The question of substantial similarity requires a visual comparison of the original copyrighted work and the allegedly infringing work. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010). "The standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal as the same." *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (internal quotation marks and alteration omitted). In some situations, it is appropriate for the court to determine substantial similarity as a matter of law, "either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito Architecture*, 602 F.3d at 63 (internal quotation marks omitted).

      2.  Copyrightability and Scope of the Copyright

Defendants raise two arguments attacking the validity of Plaintiff's copyright with respect to terraforming, but I find both to be meritless. First, Defendants argue that the terraforming is ineligible for copyright protection because it is not "fixed in any tangible medium of expression." 17 U.S.C. § 102(a). (*See* Ds' Mem. 7-8.) A work is "fixed" if it is "sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. Digital images in a video game are "fixed" within the meaning of the Act: "all portions of the program, once stored in memory devices anywhere in the game, are fixed in a tangible medium." *Stern Elecs., Inc. v. Kaufman*,

669 F.2d 852, 855 n.4 (2d Cir. 1982).  Here, Plaintiff's designs existed on Linden's data servers

and were visible within Second Life for some period of time – whether days, weeks, months, or

longer – that is clearly of more than "transitory duration."  The work was "sufficiently permanent

. . . to permit it to be perceived" by the students who interacted with the Ramapo Islands

simulation.  The fact that the students were able to alter Plaintiff's terraforming designs does not

remove them from copyright protection in the first instance.  In this regard I see no distinction

between the terraforming designs and a drawing created on a chalkboard or a sculpture created

out of moldable clay. That someone else could come along and, with or without permission, alter

the original piece of art does not mean the art was too transitory to be copyrighted in the first

place.

   Second, Defendants claim that the First Three Islands terraforming is not within the scope

of Plaintiff's copyright, because it is not prominently featured in the screenshots Plaintiff

submitted to the Copyright Office.  (Ds' Mem. 6-7.)  "[T]he dual purposes of the deposit

requirement . . . are:  (1) to provide the Copyright Office with sufficient material to identify the

work in which the registrant claims a copyright and (2) to furnish the Copyright Office with an

opportunity to assess the copyrightability of the applicant's work."  *Nicholls v. Tufenkian*

*Imp./Exp. Ventures, Inc.*, 367 F. Supp. 2d 514, 520 (S.D.N.Y. 2005) (internal quotation marks

omitted) (declining to limit design copyright to the example color submitted with deposit).

"[E]rrors contained in copyright registration, if committed without deceptive intent, are harmless

and do not invalidate the copyright. This principle extends as well to incomplete or erroneous

deposit materials."  *Id.* (internal citations and quotation marks omitted).  While it may have been

prudent for Plaintiff to include more screenshots of the terraforming of the First Three Islands in

the deposit, the overall design of that terraforming is visible in the last of the screenshots. I see

no reason to exclude from the scope of the copyright any component Plaintiff created that is visible in the deposit materials.

3.  Infringement

In this case, two distinct instances of infringement are alleged:  the unauthorized display of the content on the Second Three Islands after August 1, 2008, and the unauthorized copying of the terraforming on the First Three Islands in early 2011.  (P's Reply 2, 4-7; P's Mem. 14.)  With respect to the Second Three Islands content, it is undisputed that after August 1, 2008, Plaintiff entered Second Life and removed content, (Ds' 56.1 ¶¶ 28-29), and that content was removed by Linden in response to Plaintiff's DMCA takedown request, (P's 56.1 ¶ 56; Ds' 56.1 Resp. ¶ 56). In his deposition, Fuchs goes through each of the screenshots in Plaintiff's copyright deposit, identifying the items that Plaintiff created that Plaintiff removed from the simulation after August 1, 2008.  (*See* Fuchs Dep. 136-61.)  To the extent Defendants claim all of Plaintiff's content was gone by August 1, 2008, the portions of the record Defendants cite do not support that assertion; in fact, those portions, fairly read, constitute an admission that some content remained after that date until Plaintiff removed it.  (*See* Sheehy Dep. 108-09.)  Thus, assuming Defendants were not authorized to continue to display this content, Plaintiff has made out an undisputed *prima facie* case of infringement with respect to the Second Three Islands content. The dispute over authorization, however (see below), prevents me from granting summary judgment for Plaintiff.

Summary judgment is inappropriate with respect to the alleged 2011 copying of the terraforming on the First Three Islands.  While in some cases it may be appropriate for a court to determine substantial similarity, in this case I have not been presented with sufficient factual information to make such a determination.  Plaintiff has provided a series of detailed screenshots

allegedly depicting Ramapo Islands at the time the project was copied to OpenSim,[9] but no depiction of the terraforming as Plaintiff initially designed it is before the Court.  It is true that one of the screenshots included in Plaintiff's copyright deposit depicts the terraforming on the First Three Islands.  This image is clear enough to discern a degree of similarity sufficient for me to reject Defendants' argument that I should find the copying to be *de minimis* as a matter of law, but it is not detailed enough for me to rule that no question of fact exists as to whether the designs are substantially similar.  In addition, Plaintiff has not identified when that image was captured (it appears to be several years after Plaintiff first created the terraforming) or precisely how much of the terraforming design is its original work, as opposed to modifications subsequently made by Sheehy's students.  In other words, there is no question that some terraforming designs on the First Three Islands were copied in 2011, but whether the copy included Plaintiff's copyrighted terraforming designs, or substantially similar designs, remains a disputed question of fact.  Summary judgment on the question of infringement by copying the terraforming on the First Three Islands is inappropriate.

> 4.   Authorization

Defendants contend that the terraforming on the First Three Islands was done on a volunteer basis, and the $5,000 the District paid to Plaintiff entitled Defendants to the continued use and display of the content Plaintiff created on the Second Three Islands.  There are three ways authorization could have been obtained:  by license, under the first sale doctrine, or as a volunteered gift.

---

[9] These screenshots, attached as exhibits to Doc. 48, were submitted by Plaintiff to the Court and opposing counsel on January 11, 2013.  Defendants contend, by letters dated January 14, 2013 and February 7, 2013, that I should disregard this submission because it was untimely and because Plaintiff admitted to modifying the files obtained from OpenSim before taking the screenshots.  (Docs. 49, 53.)  At that time, I deferred a final ruling as to whether to strike the submission.  (*See* Doc. 52.)  I need not resolve this issue, however, as I am already denying Plaintiff's Motion, and striking the submission would only provide further cause to deny the Motion.

The possession of a license is an affirmative defense to a claim for copyright infringement.  *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995).  While the grant of an exclusive license is required by statute to be in writing, *see* 17 U.S.C. § 204, "a nonexclusive license may be granted orally, or may even be implied from conduct," *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 119 (S.D.N.Y. 2012) (internal quotation marks omitted).  The Second Circuit has not yet had occasion to rule on the precise circumstances in which a license may be implied, but it has "cautioned that implied non-exclusive licenses should be found only in narrow circumstances where one party created a work at the other's request and handed it over, intending that the other copy and distribute it."  *Id.* at 120 (quoting *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000)).

Under the first sale defense, "the owner of a particular copy lawfully made . . . or any person authorized by such owner, is entitled, without the authority of the copyright owner, to display that copy publicly."  17 U.S.C. § 109(c).  "[O]nce the copyright owner places a copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution."  *Quality King Distribs., Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 152 (1998); *see Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1354-55 (2013).

A genuine dispute of material fact exists with respect to whether Defendants' actions were authorized.  While Defendants have done a less-than-admirable job of teeing this issue up for the Court's attention, they do assert that Sheehy believed the District had purchased the right to the continued use of the content Plaintiff had created for the Second Three Islands at her request.  (Ds' 56.1 Resp. ¶ 52; Sheehy Dep. 106-09.)  Apart from agreeing that the issue of copyright ownership was never explicitly discussed, (Ds' 56.1 Resp. ¶ 35), neither side has

offered any evidence on the terms of the 2007 unwritten agreement between the parties pursuant to which that $5,000 changed hands.  Additionally, the parties dispute whether the work Plaintiff did during the 2006-2007 school year (which includes the First Three Islands terraforming) was on a volunteer basis or for pay, and even Plaintiff has not suggested what the terms of his retention were.  Thus, questions of fact exist as to the nature and terms of the understandings between the parties and what rights Defendants obtained.  Summary judgment for the Plaintiff is therefore inappropriate.

### C. <u>Defendant's Motion for Summary Judgment</u>

1. <u>Fair Use</u>

Defendants' principal contention in support of their Motion is that even if they were not authorized to use the Second Three Islands content or the First Three Islands terraforming beyond August 1, 2008, any use beyond that date constitutes fair use.[10]

The fair use doctrine "permits and requires courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity that law is designed to foster."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (alteration and internal quotation marks omitted).  The Copyright Act provides that the use or limited reproduction of a copyrighted work "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107.  Because fair use is an affirmative defense to a claim of copyright infringement, the burden of proof rests with the party asserting it.  *Infinity Broadcast Corp. v. Kirkwood*, 150 F.3d 104, 107 (2d Cir. 1998); *see Sarl Louis Feraud Intl. v. Viewfinder, Inc.*, 489 F.3d 474, 484 n.7 (2d Cir. 2007).  The applicability of the fair use defense is a mixed question of law and fact

---

[10] I will analyze the fair use defense on the assumption that Defendants did not have the right to continued use of the copyrighted material.  Obviously, if that material was sold, licensed perpetually, or given as a gift, the fair use defense would be superfluous.  That question is a material dispute of fact not appropriate for resolution by the Court.

and is suitable for resolution on summary judgment where there is no genuine dispute of material fact with respect to the defense.  *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006).

The Copyright Act directs courts to consider four factors when deciding whether particular conduct constitutes fair use:  "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work."  17 U.S.C. § 107(1)-(4).  These statutory factors are not requirements; the party seeking a judgment of fair use need not show that every factor weighs in its favor, and the factors are non-exclusive.  *See Cariou v. Prince*, 714 F.3d 694, 705 (2d Cir. 2013).  The fair use determination is an "open-ended and context-sensitive inquiry," *id.*, and while "the fourth factor is the most important," *Stewart v. Abend*, 495 U.S. 207, 238 (1990) (internal quotation marks omitted), no single factor is determinative.  "All are to be explored, and the results weighed together, in light of the purposes of copyright."  *Campbell*, 510 U.S. at 578. "'If the use is otherwise fair, then no permission need be sought or granted.  Being denied permission to use a work does not weigh against a finding of fair use.'"  *Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 146 (2d Cir. 1998) (alterations omitted) (quoting *Campbell*, 510 U.S. at 585 n.18).

i.   <u>Purpose and Character of the Use</u>

The first factor to be considered is the purpose and character of the use.  This inquiry includes measuring the extent to which the use is "transformative" – whether it "adds something new, with a further purpose or different character, altering the first with new expression,

16

meaning, or message." *Campbell*, 510 U.S. at 579; *see Cariou*, 714 F.3d at 705-06.  The first

factor also considers whether the use "is of a commercial nature or is for nonprofit educational

purposes," 17 U.S.C. § 107(1), but "[t]he commerciality of the use must be considered with care.

After all, not-for-profit enterprises may infringe copyrights, and conversely, if 'commerciality

carried presumptive force against a finding of fairness, the presumption would swallow nearly all

of the illustrative uses listed in the preamble paragraph of § 107,'" *Associated Press v. Meltwater*

*U.S. Holdings, Inc.*, No. 12-CV-1087, 2013 WL 1153979, at *11-12 (S.D.N.Y. Mar. 21, 2013)

(quoting *Campbell*, 510 U.S. at 584).  The fair use statute does not provide blanket immunity for

classroom or educational uses:  "[t]he crux of the profit/nonprofit distinction is not whether the

sole motive of the use is monetary gain but whether the user stands to profit from exploitation of

the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc. v.*

*Nation Enters.*, 471 U.S. 539, 562 (1985).  Thus, "a finding that the alleged infringers copied the

material to use it for the same intrinsic purpose for which the copyright owner intended it to be

used is strong indicia of no fair use." *Marcus v. Rowley*, 695 F.2d 1171, 1175 (9th Cir. 1983).

      Here, Defendants' use of the material in question is primarily, if not exclusively, for

nonprofit educational purposes.  The Ramapo Central School District is a public school district.

(Compl. ¶ 24; Answer ¶ 24).  From its inception, the Ramapo Islands project was used in a

classroom setting to allow students at the Suffern Middle School to explore virtual world

technology while learning about science, art, language, and music.  (P's 56.1 ¶ 46; Ds' 56.1 ¶¶ 2-

3.)  There is no evidence in the record that the school or any of its students derived revenue from

the project in any way.[11]

---

[11] While it is unclear whether Sheehy ever personally profited from Defendants' use of Plaintiff's Second Life content via honoraria for giving talks about the Ramapo Islands project, (P's 56.1 Resp. ¶ 41; Sheehy Dep. 67-84), this dispute does not affect my ruling on the question of fair use.

Nevertheless, this case does not resemble that of a teacher using an excerpt of a copyrighted work as part of a limited instructional exercise.  Rather, as to the Second Three Islands, the allegations more closely resemble misappropriation or conversion.  Defendants retained full use of the precise content Plaintiff created "without paying the customary price." *Harper & Row*, 471 U.S. at 562.  When Defendants continued to use that unlicensed content, it was "for the same intrinsic purpose" as that intended by Plaintiff.  *Marcus*, 695 F.2d at 1175.  Therefore, as to the Second Three Islands content, the first factor weighs against a finding of fair use.  As to the First Three Islands, the students' subsequent alterations of the terraforming – if any – could be regarded as transformative, but the record is unclear as to the nature and extent of any such alterations.  In these circumstances, material issues of fact preclude a finding that the purpose and nature of the use were fair regarding the terraforming on the First Three Islands.

        ii.    <u>Nature of the Copyrighted Work</u>

The second factor – the nature of the copyrighted work – calls for "recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586.  This inquiry focuses on "whether the work is expressive or creative, with a greater leeway being allowed to a claim of fair use where the work is factual or informational." *Cariou*, 714 F.3d at 709 (alteration omitted).  This factor "is rarely found to be determinative," *On Davis v. The Gap, Inc.*, 246 F.3d 152, 175 (2d Cir. 2001), and has been called the "least important and most unclear of the four factors," *Dow Jones & Co. v. Bd. of Trade of Chicago*, 546 F. Supp. 113, 120 (S.D.N.Y. 1982).

Here, Plaintiff created objects, buildings, landscaping, and terraforming within Second Life.  This digital artwork is within the creative "core of intended copyright protection" for

which fair use is more difficult to establish.  *Campbell*, 510 U.S. at 586; *see Bill Graham Archives*, 448 F.3d at 612 ("[T]he creative nature of artistic images typically weighs in favor of the copyright holder.")  The second factor weighs against a finding of fair use.

　　　　　　　　　iii.　　Amount and Substantiality of the Use

The third factor considers whether "'the amount and substantiality of the portion used in relation to the copyrighted work as a whole' are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (internal citation and parenthetical omitted) (quoting 17 U.S.C. § 107(3)).  This factor "has both a quantitative and a qualitative component;" it "favors copyright holders where the portion used by the alleged infringer is a significant percentage of the copyrighted work, or where the portion used is essentially the heart of the copyrighted work." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 480 (2d Cir. 2004) (internal quotation marks omitted). The "question most relevant to this factor [is] whether no more was taken than necessary" given the creative purpose of the copying.  *Infinity Broadcast Corp.*, 150 F.3d at 110 (internal quotation marks omitted).

The only evidence in the record regarding exactly what portions of Plaintiff's copyrighted content remained on display after August 1, 2008 is Fuchs's deposition.  In that deposition, Fuchs is shown, one by one, each screenshot from Plaintiff's copyright deposit.  For each screenshot, Fuchs identifies what is visible in the image, how much of that content Plaintiff created, and whether or not Plaintiff removed that content from Ramapo Islands after the August 1 cut-off date.  (*See* Fuchs Dep. 136-61.)  Based on this evidence, which is uncontroverted by Defendants, it appears that the amount of content used by Defendants after August 1, 2008, was a substantial part – if not the entirety – of Plaintiff's copyrighted works.   Furthermore, because it appears that Defendants' use of the material was for the same purpose for which the material was

originally intended, rather than for a new or transformative purpose, it is difficult even to ask whether the amount copied was no greater than necessary for that new purpose.  I find that the third factor weighs against a finding of fair use.

                iv.     <u>Effect of the Use on the Market for or Value of the Work</u>

The fourth fair use factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original."  *Campbell*, 510 U.S. at 590 (alteration and internal quotation marks omitted).  "Where there is a fully functioning market for the infringer's use of the copyrighted material, it will be difficult for the infringing party to show that it made fair use without paying a licensing fee."  *Associated Press*, 2013 WL 1153979, at * 19 (citing *Harper & Row*, 471 U.S. at 566 n.9).  "[A] particular unauthorized use should be considered more fair when there is no ready market or means to pay for the use, while such an unauthorized use should be considered less fair when there is a ready market or means to pay for the use."  *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 931 (2d Cir. 1994) (internal quotation marks omitted).  Thus, fair use is more likely "when the use is transformative or takes place in a market that the copyright holder is unlikely to develop."  *Associated Press*, 2013 WL 1153979, at *20.

Here, the market in which Defendants' use of the material occurred is the same market that Plaintiff is targeting in creating its works in the first place.  Plaintiff is a company that specializes in the creation of virtual world content for use in education.  (P's 56.1 ¶ 1.)  Indeed, Defendants hired Plaintiff to create the very work the continued display of which is the subject of this lawsuit.  Defendants continued to reap the benefits of using that protected material without

authorization, thereby choosing not to avail themselves of the "ready . . . means to pay for the use" that exists in the market. *Am. Geophysical Union*, 60 F.3d at 931. Widespread behavior of that sort by those who hire others to create virtual content would clearly undercut the creators' ability to collect on the full value of the works they author. On the assumption that the use in question was not authorized, *see* Note 10 above, the fourth fair use factor also weighs against a finding of fair use.

      2.   Other Arguments Regarding the First Three Islands Terraforming

Defendants make three other arguments in support of their Motion with respect to the First Three Islands terraforming, but I find each to be meritless. First, Defendants argue that the terraforming is ineligible for copyright protection because it is not "fixed in any tangible medium of expression." 17 U.S.C. § 102(a). (*See* Ds' Mem. 7-8.) Second, Defendants claim that the First Three Islands terraforming is not within the scope of Plaintiff's copyright, because it is not prominently featured in the screenshots Plaintiff submitted to the Copyright Office. (*Id.* 6-7.) Both of these arguments are addressed (and rejected) above in the context of Plaintiff's Motion.

Third, Defendants argue that students in Sheehy's class had so substantially altered the First Three Islands terraforming from Plaintiff's original design by the time the Ramapo Islands project was copied onto the OpenSim servers in 2011 that any remaining trace of Plaintiff's copyrighted content was *de minimis*. (*Id.* 9-12.) In this context, the *de minimis* concept refers to the idea that the allegedly infringing use "has occurred to such a trivial extent as to fall below the quantitative threshold of substantial similarity, which is always a required element" of a copyright infringement claim. *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997). As discussed above, I have examined the screenshot of the terraforming included in Plaintiff's copyright deposit, (Doc. 39 Ex. I, final image), and compared it to screenshots from

the files that were copied to OpenSim in 2011, (Doc. 48 Exs. 1-3).[12]  I cannot say that any

similarity is so insubstantial as to prevent the question from being put before a jury.

III.   <u>CONCLUSION</u>

      I find that genuine disputes of material fact exist as to:  (a) the nature of the use permitted

by Plaintiff based on the understandings between the parties and (b) the existence and extent of

infringement.  Additionally, I find that none of the fair use factors point in favor of a finding of

fair use.  Accordingly, Plaintiff's Motion for Partial Summary Judgment is DENIED and

Defendants' Cross-Motion for Summary Judgment is DENIED.  The Clerk of Court is directed

to terminate the pending Motions, (Docs. 35, 37).  The parties are directed to appear before me

on October 24, 2013 at 11:00 a.m. for a status conference.


**SO ORDERED.**


Dated:  September 26, 2013
      White Plains, New York


                                _____
                                CATHY SEIBEL, U.S.D.J.

---

[12] The parties dispute whether it is appropriate for me to consider Doc. 48 as part of the record for purposes of the instant Motions for Summary Judgment.  *See* Note 9 above.  I need not resolve this issue, however, because were I to refuse to consider that submission, there would be no evidence in the record showing or describing the material that was copied to OpenSim in 2011.  Were that the case, I would be forced to rule against Defendants on their *de minimis* argument anyway, as Defendants bear the burden of production on their own Motion for Summary Judgment and I would be unable to evaluate whether the alleged copying was *de minimis* as a matter of law.